UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BALBINA DE OLIVEIRA,
    Plaintiff,

    v.

MICHAEL J. ASTRUE, Commissioner
of Social Security,
    Defendant.

CIVIL ACTION NO.
10-11905-JLT

**REPORT AND RECOMMENDATION RE:
MOTION TO DISMISS
(DOCKET ENTRY # 5)**

**August 1, 2011**

**BOWLER, U.S.M.J.**

Pending before this court is a motion by defendant Michael J. Astrue ("Commissioner" or "defendant") seeking to dismiss the complaint filed by plaintiff Balbina De Oliveira ("plaintiff") pursuant to Rule 12(b), Fed. R. Civ. P. ("Rule 12(b)"). (Docket Entry # 5).

<u>PROCEDURAL HISTORY</u>

On March 22, 2007, plaintiff filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act. (Docket Entry # 6, Ex. 1). In the application, plaintiff alleged that the disability started on July 30, 2006. (Docket Entry # 6, Ex. 1).

On May 10, 2007, plaintiff's disability claim was denied at the initial level of review and she was notified by a letter

written in English. (Docket Entry # 6, Ex. 1, p. 8). On May 31, 2007, plaintiff requested review of the denial by a reviewing official. (Docket Entry # 12, Ex. 1, p. 20). On August 20, 2008, the reviewing official denied plaintiff's claim and again plaintiff was notified by a letter written in English. (Docket Entry # 6, Ex. 1, p. 8).

As of September 25, 2008, plaintiff was represented by counsel. (Docket # 12, Ex. 1, p. 10). On September 30, 2008, plaintiff filed a request for a hearing. (Docket Entry # 6, Ex. 1, p. 8). On November 23, 2009, the Administrative Law Judge ("ALJ") held a hearing and plaintiff testified through a Portuguese interpreter. (Docket Entry # 6, Ex. 1, p. 8). On December 29, 2009, the ALJ denied plaintiff's claim for disability insurance benefits under Title II. (Docket Entry # 6, Ex. 1, p. 3).

The ALJ found that plaintiff's cystic fibrosis did not meet or medically equal listing 3.04B in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Docket Entry # 6, Ex. 1, p. 11). In addition, the ALJ found that after considering the evidence plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the ALJ determined that plaintiff's statements concerning her symptoms were not credible because the statements were inconsistent with the record as a whole. (Docket Entry # 6, Ex. 1, p. 12). Finally, even though

2

plaintiff appeared with a Portuguese interpreter at the hearing and a Social Security Administration ("SSA") field employee had noted in an interview that plaintiff had a "slight language barrier" (Docket Entry # 12, Ex. 1, p. 2), the ALJ found that plaintiff was "able to communicate in English." (Docket Entry # 6, Ex. 1, p. 14).

The letter written in English and sent to plaintiff and her counsel that contained the ALJ's December 29, 2009 decision also explained that the Decision Review Board had selected plaintiff's claim for review and therefore the decision of the ALJ did not constitute the final decision of the SSA. (Docket Entry # 6, Ex. 1, p. 3). As stated in the letter, the SSA had 90 days from the date of notice to complete its action on plaintiff's claim; otherwise the ALJ's decision would become the final decision. (Docket Entry # 6, Ex. 1, p. 5).

On April 5, 2010, the SSA informed plaintiff, through a letter written in English and sent to both plaintiff and her counsel, that the Decision Review Board had not acted on plaintiff's claim within 90 days and therefore the ALJ's decision denying disability insurance benefits became the final decision of the SSA. (Docket Entry # 6, Ex. 1, p. 19). The notice additionally explained that plaintiff could file a civil action within 60 days of the date of notice. (Docket Entry # 6, Ex. 1, p. 19).

Soon after the April 5, 2010 final notice from the SSA plaintiff's counsel withdrew her representation of plaintiff. (Docket Entry # 8, Ex. 1). In August 2010, plaintiff secured present counsel. (Docket Entry # 8, Ex. 1).

On November 5, 2010, plaintiff filed this action. (Docket Entry # 6, Ex. 1, p. 4). On January 13, 2011, defendant filed the motion to dismiss. (Docket Entry # 5). On February 22, 2011, plaintiff filed an opposition to the motion to dismiss. (Docket Entry # 8). After conducting a hearing on July 21, 2011, this court took the motion (Docket Entry # 5) under advisement. (Docket Entry # 13).

DISCUSSION

A. Statute of Limitations

Plaintiff does not contest that the she did not file her civil appeal within the statute of limitations at bar. (Docket Entry # 8). She argues, however, "that she was unaware of the deadline to file in District Court as she is not literate nor speaks English." (Docket Entry # 8).

Under Title II of the Social Security Act, Congress prescribed the procedures and conditions for the judicial review of final decisions made by the Commissioner. 42 U.S.C. §§ 405(g) & (h) ("section 405(g)" and "section 405(h)"). Section 405(g) provides for judicial review of a final determination by the SSA

4

within 60 days of the claimant's receipt of the SSA's determination.  The section states in relevant part:

> (g) Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

42 U.S.C. § 405(g).

The subsequent subsection in the code, section 405(h), provides that this timely appeal is the only method by which a claimant may challenge the SSA's final decision of a Social Security determination in federal court.  The pertinent section reads as follows:

> (h) The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.  No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided.  No action against the United States, the Commissioner of Social Security or any officer of employee thereof shall be brought under section 1331 or 1346 of Title 28, United States Code, to recover on any claim arising under this title.

42 U.S.C. § 405(h).

Thus, the only civil action that an individual may bring on any claim arising under Title II of the Social Security Act is an action to review the final decision made by the Commissioner after the case has been heard.  42 U.S.C. §§ 405(g) & (h).  It is also worth noting that the 60 day limitation "is not

5

jurisdictional, but rather constitutes a period of limitations." Bowen v. City of New York, 476 U.S. 467, 478 (1986).

Section 405(g) requires that an individual must commence a civil action within 60 days after mailing of the notice of the Commissioner's final decision. See 42 U.S.C. § 405(g). Under 20 C.F.R. § 422.210(c), however, a civil action "must be instituted within 60 days after the Appeals Council's notice of denial of request for review of the presiding officer's decision or notice of the decision by the Appeals Council is *received* by the individual." 20 C.F.R. § 422.210(c) (emphasis added). "Courts agree that 20 C.F.R. § 422.210(c) makes the date that the claimant receives the Commissioner's notice of decision the trigger point for statute of limitation purposes." Merced v. Astrue, 2010 WL 5146323, at *2 (D.Mass. Oct. 29, 2010); see also McCall v. Bowen, 832 F.2d 862, 864 (5th Cir. 1987).[1] "Moreover, 20 C.F.R. § 422.210(c) creates a rebuttable presumption that the date of receipt is five days after the mailing of such notice unless the plaintiff makes 'a reasonable showing to the contrary.'" Vazquez-Orta v. Astrue, 611 F.Supp.2d 97, 98-99 (D.P.R. 2008). Therefore, rather than commencing on the date notice of decision is mailed to the claimant, the 60 day period starts from the time notice is received by the claimant.

---

[1] An unpublished case in the First Circuit, Piscopo v. Secretary of Health and Human Services, 1994 WL 283919, at *3 (1st Cir. June 27, 1994), agrees with the above interpretation of the interplay between section 405(g) and 20 C.F.R. § 422.210(c).

6

Section 405(g) plainly evidences a Congressional purpose "to impose a 60 day limitation upon judicial review of the Secretary's final decision on the initial claim for benefits." Califano v. Sanders, 430 U.S. 99, 108 (1977); see also Colon v. Secretary of Health and Human Services, 877 F.2d 148, 152 (1$_s^t$ Cir. 1989). The 60 day limit also serves a practical function: "[I]n addition to serving its customary purpose, the statute of limitations embodied in § 405(g) is a mechanism by which Congress was able to move cases to speedy resolution in a bureaucracy that processes millions of claims annually." Bowen, 476 U.S. at 481; see also Merced v. Astrue, 2010 WL 5146323, at *2 (D.Mass. Oct. 29, 2010).

It is more than evident that the petition is untimely inasmuch as it was filed on November 5, 2010, well after the 60 day period. (Docket Entry # 6, Ex.1, p. 4). Plaintiff does not contest the untimeliness of the petition but argues "that she was unaware of the deadline to file in District Court as she is not literate nor speaks English." (Docket Entry # 8). Plaintiff had 60 days from receipt of the April 5, 2010 notice of final decision, which was June 9, 2010, to commence action in this court. 42 U.S.C. § 405(g). On November 5, 2010, more than 60 days after plaintiff received notice of decision, plaintiff filed the complaint in this action. (Docket Entry # 6, Ex.1, p. 4). Absent equitable tolling, this action is untimely.

B. <u>Equitable Tolling</u>

Plaintiff does not contest that the statute of limitations has run on her time to file a civil appeal. (Docket Entry # 8). She argues, however, "she was unaware of the deadline to file in District Court as she is not literate nor speaks English." (Docket Entry # 8). Therefore, plaintiff asserts that equitable tolling should apply.

The Commissioner may allow the statute of limitations to equitably toll if the claimant has "good cause" for missing the deadline. See 20 C.F.R. §§ 404.911(a) & 416.1411(a). A "linguistic limitation (including any lack of facility with the English language) which prevented [the claimant] from filing a timely request or from understanding or knowing about the need to file a timely request for review" may provide good cause for equitable tolling. 20 C.F.R. §§ 404.911(a)(4) & 416.1411(a)(4).

Because Congress determined that equitable tolling was consistent with the congressional intent of section 405(g), "Congress has authorized the Secretary to toll the 60 day limit, thus expressing its clear intention to allow tolling in some cases." Bowen, 476 U.S. at 480. In regards to the court's authority to review the Commissioner's decision and toll the statute of limitations, however:

> While in most cases the Commissioner will make the determination whether it is proper to extend the period within which review must be sought, cases may arise where the equities in favor of tolling the limitations period are

>  "so great that deference to the agency's judgment is
>  inappropriate."

Id. (quoting Mathews v. Eldridge, 424 U.S. 319, 330 (1976)).

The First Circuit in Jobe set out a number of factors to consider relative to equitable tolling albeit not in the context of a social security case. See Jobe v. I.N.S., 238 F.3d 96, 100 (1st Cir. 2001). These factors, which provide a guide in evaluating equitable tolling, are:

> (1) A lack of actual notice of the time limit; (2) a lack of constructive notice of the time limit; (3) diligence in the pursuit of one's rights; (4) an absence of prejudice to a party-opponent; and (5) the claimant's reasonableness in remaining ignorant of the time limit.

Id. These factors have been applied to Social Security cases. See Muldoon v. Astrue, 590 F.Supp.2d 188, 194 (D.Mass. 2008).

If the claimant does not allege that any of the five factors apply then the court must turn to general principles of the equitable tolling doctrine. Id. "Equitable tolling generally only applies when circumstances beyond the litigant's control prevent him from complying with the statute of limitations." Id. In addition, "the claimant has a duty to exercise reasonable due diligence in obtaining the information essential to [her] claim." Id. at 195.

The court in Correa held that when a claimant is accustomed to receiving notices in a language other than English from the SSA that require immediate action, but the notice stating that benefits were denied and the claimant has 60 days to file a civil

9

action was in English, tolling the statute of limitations to allow time to find an interpreter and legal services is appropriate. See Correa v. Bowen, 682 F.Supp. 755, 757 (S.D.N.Y. 1988). Moreover, the process of civil review and adjudication of disputed disability claims was designed to be "unusually protective" of claimants. Heckler v. Day, 467 U.S. 104, 106 (1984). The Correa court thus allowed equitable tolling to extend the statute of limitations by six days because it protected the claimant without causing "undue harm or prejudice to the Social Security Administration." Correa, 682 F.Supp. at 757.

Examining the foregoing factors, there is little, if any, evidence to show a lack of actual notice of the deadline. The surrounding circumstances indicate that plaintiff and her counsel received notice from the SSA stating that the ALJ's decision was to become final. (Docket Entry # 6, Ex. 1, p. 19). The letter included the notification that plaintiff had 60 days to commence a civil suit to review the decision pursuant to section 405(g). (Docket Entry # 6, Ex. 1, pp. 19-21).

Second, there was no lack of constructive notice of the deadline, as plaintiff received this notice in English, similar to all of her prior communications with the SSA. Unlike the circumstances at issue in Correa, the entirety of plaintiff's notifications had been in English and had not hindered her

ability to proceed through the administrative appeals process in a timely manner.  For example, on May 10, 2007, plaintiff received a letter in English notifying her of the SSA's denial of her application.  (Docket Entry # 6, Ex. 1, p. 8).  Despite her lack of counsel and alleged deficiency in English, on May 31, 2008, she was able to timely request a review of the decision by the reviewing official.  Plaintiff's counsel also received the April 5, 2010 notice.  Finally, in his decision the ALJ concluded that plaintiff was "able to communicate in English."  (Docket Entry # 6, Ex. 1, p. 14).

Third, there is little evidence that plaintiff exercised due diligence.  Plaintiff does not allege that during the 60 day period she was unsuccessful, despite her best efforts, in obtaining translation assistance and procuring legal materials.  In addition, plaintiff did not file the present claim until almost five months past the deadline.

Fourth, defendant acknowledges that he would not be prejudiced if equitable tolling was applied.  That said, the seven months between April 5 and November 5, 2010, that plaintiff took to file this action is far greater than the additional five days allowed by the Correa court.  See Correa, 682 F.Supp. at 757.  The practical function of the 60 day limitation emphasizes the importance of efficiency in the process of appealing the Commissioner's decision due to the vast number of civil actions

11

filed.  See Bowen, 476 U.S. at 481.  Allowing equitable tolling for a complaint filed five months after the end of the 60 day limitation would not serve the Congressional purpose of section 405(g) of moving cases to a "speedy resolution," Bowen, 46 U.S. at 481, and would potentially increase the number of petitions challenging the Commissioner's tolling decisions.

Fifth, plaintiff was not reasonable in remaining ignorant of the 60 day time limit because she had received notice of the statute of limitations on April 5, 2010, in a letter written in English.  (Docket Entry # 6, Ex. 1, p. 19).  Plaintiff's counsel at the time also received the letter that contained the notice.

Plaintiff does not allege that circumstances beyond her control prevented her from complying with the statute of limitations.  See Muldoon, 590 F.Supp.2d at 194.  Plaintiff's single allegation is that the language barrier prevented her from knowing the 60 day limitation; however, both plaintiff and her counsel at the time had a copy of the letter that explicitly stated the statute of limitations.  In addition, there is little evidence to indicate that plaintiff exercised reasonable due diligence in obtaining the information essential to her claim. See Muldoon, 590 F.Supp.2d at 195.

Plaintiff also cites and relies on the Program Operations Manual System of the SSA ("POMS"), a set of instructions designed to ensure consistent decisions within the agency to support

tolling of the statute of limitations.  See POMS GN 03101.020.B.1.d.  Similar to 20 C.F.R. §§ 404.911(a)(4) and 416.1411(a)(4), the foregoing section of POMS states that when determining whether to allow tolling of the statute of limitations the SSA considers whether the claimant's "linguistic limitations (including lack of understanding of the English language) prevented him or her from filing a timely request or from understanding or knowing about the need to file a timely request."  Id.  Accordingly, the SSA may take a linguistic limitation into consideration when determining whether the claimant has good cause for failing to timely file a civil action.  This exception, however, does not apply to plaintiff.  In addition to other circumstances, she demonstrated her ability to navigate the early stages of the SSA appeals process in a timely manner relying solely on the written English communications with the SSA and she had counsel to assist her with these communications.

Finally, plaintiff points out that she contacted present counsel approximately 60 days after the filing deadline and thereafter sought an extension of time from the Commissioner which has not been acted upon.  This is not enough for equitable tolling, however, because the lengthy period of time that plaintiff took to retain counsel does not show that she was

exercising "reasonable due diligence in obtaining the information essential to her claim." <u>Muldoon</u>, 590 F.Supp.2d at 195.

## CONCLUSION

For the foregoing reasons, this court **RECOMMENDS**[2] that the motion to dismiss (Docket Entry # 5) be **ALLOWED**.

                                      /s/ Marianne B. Bowler
                                      **MARIANNE B. BOWLER**
                                        United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.